# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JOSE MILTON BAUTISTA ESCAMILLA,

     Plaintiff,

         v.

DAVID NUYEN
D/B/A USA HOME CHAMPION REALTY
D/B/A OPMAX,

USA HOME CHAMPION REALTY, INC.,

OPMAX MANAGEMENT, LLC,

OPMAX, LLC,

     Defendants.

Civil Action No. 14-852 (AK)

## MEMORANDUM OPINION

Plaintiff Jose Milton Bautista Escamilla ("Plaintiff" or "Mr. Escamilla") seeks partial Summary Judgment against Defendants David Nuyen d/b/a USA Home Champion Realty and d/b/a Opmax ("Mr. Nuyen"), USA Home Champion Realty, Inc. ("Home Champion Realty"), Opmax Management, LLC ("Opmax Mgmt."), and Opmax, LLC ("Opmax") (collectively, "Defendants"). (*See* Mot. for Partial Summary Judgment ("Motion") [26].) Plaintiff and Defendants consented to a referral of the case to this Court for all purposes, including trial. (Order of Referral [11].) For the reasons set forth below, Plaintiff's Motion is denied. An appropriate Order accompanies this Memorandum Opinion.

## I.      BACKGROUND

### A.  Statutory Framework

The Federal Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. § 201 *et seq.*, sets forth the requirements under which an employee is entitled to overtime pay. The D.C.

Minimum Wage Revision Act of 1992 ("DCMWA"), D.C. Code §§ 32-1001 *et seq.*, largely

mirrors the FLSA's overtime requirements.  *See Williams v. W.M.A. Transit Co.*, 472 F.2d 1258,

1260–61 (D.C. Cir. 1972).  Specifically, the FLSA provides that "no employer shall employ any

of his employees . . . for a workweek longer than forty hours unless such employee receives

compensation for his employment in excess of the hours above specified at a rate not less than

one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).

Somewhat tantamount, the FLSA defines an "employer" as "any person acting directly or

indirectly in the interest of an employer in relation to an employee" and an "employee" as "any

individual employed by an employer."  *Id.* § 203(d)–(e)(1).

      In construing the FLSA, the Supreme Court determined that "'economic reality' rather

than 'technical concepts' is to be the test of employment."  *Goldberg v. Whitaker House Coop.,

Inc.*, 366 U.S. 28, 33 (1961).  The economic reality test considers "whether the alleged employer

(1) had the power to hire and fire the employees, (2) supervised and controlled employee work

schedules or conditions of employment, (3) determined the rate and method of payment, and (4)

maintained employment records."  *Morrison v. Int'l Programs Consortium, Inc.*, 253 F.3d 5, 11

(D.C. Cir. 2001) (quoting *Henthorn v. Dep't of Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994)).

      Any violation of the FLSA's overtime provisions results in liability "to the employee or

employees affected in the amount of their unpaid minimum wages, or their unpaid overtime

compensation, as the case may be, and in an additional equal amount as liquidated damages."  29

U.S.C. § 216(b).  The employee's private right of action is subject to a two-year statute of

limitations unless the employer committed a "willful violation," in which case the statute of

limitations is extended to three years.  *Id.* § 255(a).  An employer commits a willful violation if

"the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

A court may refuse to award liquidated damages under the FLSA if the employer shows that he acted "in good faith" and "had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938." 29 U.S.C. § 260. A court's decision to refrain from awarding liquidated damages is reviewed for abuse of discretion, but a court's determination of "good faith" and "reasonable grounds" is reviewed for clear error. *See Thomas v. Howard Univ. Hosp.*, 39 F.3d 370, 372–73 (D.C. Cir. 1994).

## B. Factual Background

Plaintiff began working for David Nuyen (hereafter "Mr. Nuyen" or "Defendant"[1]) in March 2008. (Pl.'s Mot. [26-1] at 1; Decl. Sung Dang [27] at 18.) Sung Dang (hereafter "Mr. Dang") hired Plaintiff to work in Mr. Nuyen's apartment buildings. (Def.'s Am. Interrog. Answers [26-7] at 2.) Plaintiff signed a contract with Mr. Dang and Mr. Nuyen, but Defendant has been unable to locate a copy of the contract. (*Id.*) Plaintiff worked for Mr. Nuyen until January 2013. (Pl.'s Mot. [26-1] at 1; Decl. Sung Dang [27] at 18.)

On May 22, 2014, Plaintiff filed suit against Defendant, alleging that Defendant denied Plaintiff overtime pay in violation of the FLSA during the course of his employment with Defendant. (Pl.'s Compl. [1] at 2, 8–9.) Specifically, Plaintiff claims he worked approximately 66 hours per week during his 253 weeks of employment with Defendant but was paid $10 per hour—his regular rate of pay—for all hours worked. (Pl.'s Compl. [1] at 6.) Defendant claims that Plaintiff rarely, if ever, worked 40 hours per week during his 253 weeks of employment and that Plaintiff was paid per job as an independent contractor rather than per hour. (Def.'s Opp'n

---

[1] Mr. Nuyen is referred to as "Defendant" because his deposition indicates that the corporate Defendants are not legally separate entities from him as an individual. (Dep. David Nuyen [26-6] at 3–4.)

3

[27] at 7, 11.)  Based on the deposition of Mr. Nuyen and the affidavits of Plaintiff's coworkers,

Plaintiff now moves for partial summary judgment.  (Pl.'s Mot. [26] at 1–2.)  Specifically,

Plaintiff seeks summary judgment on the following issues: (1) that Plaintiff was Defendant's

employee under the FLSA, (2) that Defendant violated the FLSA by denying Plaintiff overtime

pay, (3) that Mr. Nuyen was Plaintiff's employer under the FLSA and thus jointly and severally

liable to Plaintiff along with corporate Defendants, (4) that Plaintiff is entitled to liquidated

damages under the FLSA, and (5) that Plaintiff is entitled to equitably toll his claims to the

beginning of his employment.  (*Id.*)

## II.   <u>LEGAL STANDARD</u>

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is to be

granted "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *accord Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The moving party must set forth the foundation

for its motion and identify segments of the record demonstrating an absence of genuine dispute

of material facts.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When ruling on a

motion for summary judgment, a court must draw all inferences in a light most favorable to the

non-moving party.  *McCready v. Nicholson*, 465 F.3d 1, 7 (D.C. Cir. 2006).  Because

"[c]redibility determinations, the weighing of inferences and the drawing of inferences from the

facts are jury functions," a court must deny summary judgment to the extent that reasonable

minds could differ over the import of the evidence.  *Anderson*, 477 U.S. at 250–51, 255.

Because the Court will be the trier of fact on an issue if this case proceeds to trial, the

summary judgment rules are slightly altered.  "[T]he 'Court is not confined to deciding questions

of law, but also may . . . draw a derivative inference from undisputed subsidiary facts, even if

those facts could support an inference to the contrary, so long as the inference does not depend upon an evaluation of witness credibility.'" *Oao Alfa Bank v. Ctr. for Pub. Integrity*, 387 F. Supp. 2d 20, 39 (D.D.C. 2005) (ellipses in original) (quoting *Cook v. Babbitt*, 819 F. Supp. 1, 11 & n.11 (D.D.C. 1993)).

### III.   <u>ANALYSIS</u>

Plaintiff argues he is entitled to summary judgment on the following issues: (1) that Plaintiff was Defendant's employee under the FLSA, (2) that Defendant violated the FLSA by denying Plaintiff overtime pay, (3) that Mr. Nuyen was Plaintiff's employer under the FLSA and is jointly and severally liable to Plaintiff along with corporate Defendants, (4) that Plaintiff is entitled to liquidated damages under the FLSA, and (5) that Plaintiff's claims are properly tolled to the beginning of his employment.  (Pl.'s Mot. [26] at 1–2.)

### 1.   <u>This Court will not strike Defendant's Opposition under Local Rule 7(h).</u>

In his Reply, Plaintiff argues Defendant's Opposition should be stricken for failure to comply with Local Rule 7(h).  (Pl.'s Reply [28] at 1–2.)  Plaintiff contends that Defendant's "Statement of Material Facts in Dispute" fails to isolate conceded and disputed facts and instead "resembles a narrative."  (Pl.'s Reply [28] at 2.)

This Court first notes that Defendant's Opposition, though not an archetype of good pleading, appears to identify the material facts that are in dispute with corresponding citations to affidavits and interrogatories.  (*See* Def.'s Opp'n [27] at 2–5.)  Thus, this case is not analogous to cases in this Circuit in which courts have held that a party failed to satisfy Local Rule 7(h).  *See, e.g., Thompson v. Evening Star Newspaper Co.*, 394 F.2d 774, 777 (D.C. Cir. 1968) (holding that plaintiff violated Local Rule 7(h) by "fil[ing] no counter-affidavits disputing any of the assertions in [defendant's] affidavits"); *Gardels v. Cent. Intelligence Agency*, 637 F.2d 770, 773

(D.C. Cir. 1980) (holding that defendant violated Local Rule 7(h) by "merely incorporat[ing] entire affidavits and other materials without reference to the particular facts recited therein which support his view that no genuine issues of material fact exist").

Moreover, this Court may exercise its discretion to consider Defendant's Opposition even if it fails to comply with Local Rule 7(h). *See Gardels*, 637 F.2d at 773.  The invocation of this discretion is appropriate here because Defendant's "conduct is not sufficiently egregious," and the purposes of Local Rule 7(h) have been satisfied.  *Davis v. Dist. of Columbia*, 503 F. Supp. 2d 104, 122 n.20 (D.D.C. 2007).  Namely, this Court is able "to decide [this] motion[] for summary judgment efficiently and effectively" based on the parties' briefings and has not been "obliged to sift through hundreds of pages of depositions, affidavits, and interrogatories" in order to do so. *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 150–51 (D.C. Cir. 1996) (internal quotation marks and citation omitted).  Accordingly, this Court will proceed to the merits of Plaintiff's motion.

    **2.**  <u>There are material facts in dispute that preclude summary judgment as to Plaintiff's status as an employee.</u>

Plaintiff argues that he was an employee of Defendant from March 2008 until January 2013.  (Pl.'s Mot. [26-1] at 4.)  Plaintiff argues that the "economic reality" test derived from *United States v. Silk*, 331 U.S. 704 (1947), supports this classification.  (*Id.*)

Under the FLSA, an "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).  Similarly, an "employee" is defined as "any individual employed by an employer." *Id.* § 203(e)(1).  In interpreting these terms, the Supreme Court reasoned that "'economic reality' rather than 'technical concepts' is to be the test of employment." *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961).  As adopted by the D.C. Circuit, the economic reality test considers four

factors: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Morrison v. Int'l Programs Consortium, Inc.*, 253 F.3d 5, 11 (D.C. Cir. 2001) (quoting *Henthorn v. Dep't of Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994)). Plaintiff and Defendant both cite a similar test from the Fourth Circuit that utilizes six factors:

> (1) the degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or his employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business.

*Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304–05 (4th Cir. 2006) (citing *Herman v. Mid-Atl. Installation Servs., Inc.*, 164 F. Supp. 2d 667, 671 (D. Md. 2000)). In both tests, no single factor is considered dispositive. *See Morrison*, 253 F.3d at 11; *Schultz*, 466 F.3d at 305.

Plaintiff argues that all of the factors weigh in favor of Plaintiff's contention that he was Defendant's employee under the FLSA. (Pl.'s Mot. [26-1] at 5–7.) Defendant responds that most factors weigh in favor of Defendant's contention that Plaintiff was an independent contractor and that the significance of the factors that do not weigh in Defendant's favor depend on disputed material facts. (Def.'s Opp'n [27] at 7–11.)

In this case, most of the factors discussed by Plaintiff and Defendant depend on credibility determinations. Plaintiff, along with two of his coworkers, states that Defendant supervised Plaintiff's work every day via phone and in-person twice per week. (Pl.'s Interrog. Answers [26-3] at 6; Aff. Cesar Rodriguez [26-4] at 2; Aff. Melbin Javier Ochoa [26-5] at 2.) Defendant, along with Mr. Dang, states that Defendant did not supervise Plaintiff's work and

that Plaintiff was directly responsible to Mr. Dang.  (Certification Sung Dang [27] at 16–17; Dep. David Nuyen [26-6] at 12–13.)  Thus, whether Mr. Nuyen exercised a significant or *de minimis* degree of control over Plaintiff's work will depend on the credibility of Plaintiff, his coworkers, Mr. Dang, and Defendant.

Similarly, Plaintiff, along with two of his coworkers, states that Defendant paid him by the hour.  (Pl.'s Interrog. Answers [26-3] at 4; Aff. Cesar Rodriguez [26-4] at 1; Aff. Melbin Javier Ochoa [26-5] at 1.)  On the other hand, Defendant, along with Mr. Dang, states that Plaintiff was paid per job.  (Certification Sung Dang [27] at 16; Dep. David Nuyen [26-6] at 16.)  Thus, whether Plaintiff had opportunities for profit or loss aside from increasing the number of hours he worked will depend on the credibility of Plaintiff, his coworkers, Mr. Dang, and Defendant.

The degree of skill that Plaintiff's work required is also in dispute.  Plaintiff claims that he was a general laborer and lacked "specialized training, certifications, or degrees."  (Pl.'s Mot. [26-1] at 6; *see also* Pl.'s Interrog. Answers [26-3] at 5–6; Aff. Cesar Rodriguez [26-4] at 1; Aff. Melbin Javier Ochoa [26-5] at 1.)  On the other hand, Defendant points out that many courts have classified construction workers, painters, and carpenters as skilled laborers (and thus as independent contractors).  *See generally* 48B Am. Jur. 2d § 2770; *see also Chao v. Mid-Atl. Installation Servs.*, 16 Fed. App'x 104, 107 (4th Cir. 2001) ("[C]arpenters, construction workers, and electricians [] are usually considered independent contractors."); *but see Montoya v. S.C.C.P. Painting Contractors, Inc.*, 589 F. Supp. 2d 569, 581 (D. Md. 2008) (finding that "painting is not a high-skilled job" (internal quotation marks and citation omitted)).  Nonetheless, this Court finds it unnecessary to resolve this dispute.  This Court finds the reasoning in *Jaworski v. Master Hand Contractors, Inc.* to be compelling:

> The undisputed facts show that the plaintiffs performed skilled construction work for Master Hand. Their skills, however, are of the sort that a general construction firm would likely have need for on many, if not most jobs, so their skill set says little about their status as contractors or employees one way or the other; they are not the sort of tradesmen that a general contractor would be unlikely to employ because their skills are so specialized as to be rarely needed. In the Court's view, this factor cuts in favor of neither party.

No. 09-07255, 2013 WL 1283534, at *5 (N.D. Ill. Mar. 27, 2013) (citation omitted). Thus, this Court finds that, in this case, the degree of skill required does not cut in favor of either party.

Plaintiff contends that his employment with Defendant was rather permanent. (Pl.'s Mot. [26-1] at 6; *see also* Aff. Cesar Rodriguez [26-4] at 2; Aff. Melbin Javier Ochoa [26-5] at 2.) However, Defendant contends that Plaintiff's work for Defendant was flexible and points to Plaintiff's failure to affirmatively state that he performed no work for other employers during the time he worked for Defendant. (Def.'s Opp'n [27] at 10; *see also* Pl.'s Interrog. Answers [27] at 26.) Thus, whether Plaintiff's and Defendant's working relationship was permanent will depend on the credibility of Plaintiff, his coworkers, Mr. Dang, and Defendant.

The only two factors that are undisputed are the provision of equipment and materials and the degree to which Plaintiff's services were an integral part of Defendant's business. Both Plaintiff and Defendant state that Mr. Nuyen, through Mr. Dang, provided the tools and supplies that Plaintiff used when performing repairs. (*See* Dep. David Nuyen [26-6] at 15; Pl.'s Interrog. Answers [26-3] at 6; Aff. Cesar Rodriguez [26-4] at 2; Aff. Melbin Javier Ochoa [26-5] at 2.) Defendant also admits that Plaintiff's work was integral to the functioning of Defendant's apartment buildings. (*See* Dep. David Nuyen [26-6] at 10–11.) However, neither of these factors are present in the economic realities test explicated by the D.C. Circuit, *Morrison*, 253 F.3d at 11, but rather are taken from the Fourth Circuit, *Schultz*, 466 F.3d at 304–05. In addition, no single factor is to be dispositive, and the Court ought "to look at the totality of the

circumstances and consider any relevant evidence." *Morrison*, 253 F.3d at 11.  On the whole, this Court finds that neither of these two factors are of significant weight, nor are they dispositive, particularly in light of the uncertainty as to the other factors.  Thus, the Court denies summary judgment as to Plaintiff's claim of employee status.

### 3.   There are material facts in dispute that preclude summary judgment as to Defendant's liability to Plaintiff for overtime pay.

Plaintiff argues that Defendant violated the FLSA by failing to pay Plaintiff one-and-one-half times his regular rate of pay for hours worked over 40 per week throughout his 253 weeks of employment.  (Pl.'s Mot. [26-1] at 7–8.)  Plaintiff argues that he has made a *prima facie* case for overtime pay because, in light of Defendant's incomplete records, he has submitted his own estimation of hours worked supported by affidavits from two coworkers.  (Pl.'s Mot. [26-1] at 8.)

Where an employer's records are incomplete or inaccurate, an employee need only "alleg[e] that he performed work for which he was not properly compensated and then 'produc[e] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference'" in order to make a *prima facie* case for overtime compensation.  *Hunter v. Sprint Corp.*, 453 F. Supp. 2d 44, 52 (D.D.C. 2006) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).  The employer must then present its own evidence as to the amount of work the employee actually performed or rebut the reasonableness of the inference from the employee's evidence.  *Id.* at 53.  Resolving disputes as to the hours of work actually performed or as to the reasonableness of the inference often "requires an assessment of credibility," which is beyond the scope of summary judgment.  *Id.*

Plaintiff cites *Hunter* for the proposition that his allegation, supported by two affidavits, is sufficient to trigger liability.  (Pl.'s Mot. [26-1] at 8.)  Defendant responds that Plaintiff did not

work the hours that he claims and presents an affidavit from Mr. Dang in support of this contention.  (Def.'s Opp'n [27] at 11.)

Plaintiff has properly made a *prima facie* case for overtime compensation.  (*See* Pl.'s Interrog. Answers [26-3] at 4; Aff. Cesar Rodriguez [26-4] at 1; Aff. Melbin Javier Ochoa [26-5] at 1.)  However, Plaintiff's argument misconstrues the holding of *Hunter*.  In *Hunter*, this Court held that, in light of the defendant's incomplete records, the plaintiff's allegation that he worked overtime, coupled with his spreadsheet estimating the overtime hours he worked, was sufficient to establish a *prima facie* case for overtime pay.  453 F. Supp. 2d at 48–49, 52–53.  This Court upheld plaintiff's *prima facie* case against defendant's motion for summary judgment because the reasonableness of plaintiff's estimates was a "dispute of material fact [that] necessarily require[d] an assessment of credibility."  *Id.* at 53.  Plaintiff's other examples, namely *Aguilar v. ALCOA Concrete & Masonry, Inc.* and *Butler v. DirectSAT USA, LLC*, similarly concern the viability of a plaintiff's *prima facie* case, not that plaintiff's entitlement to summary judgment.  *See Aguilar*, No. 15-0683, 2015 WL 6756044 at *1 (D. Md. Nov. 4, 2015); *Butler*, 47 F. Supp. 3d 300, 308–09 (D. Md. 2014).  Like in *Hunter*, Plaintiff in this case estimates that he worked 66 hours per week, but Defendant contests the reasonableness of that estimate.  (*See* Pl.'s Interrog. Answers [26-3] at 4; Def.'s Opp'n [27] at 5–6.)  In this case, then, as in *Hunter*, "summary judgment is not the proper vehicle" for disposing of this dispute.  453 F. Supp. 2d at 53.

Moreover, Defendant has proffered evidence that Plaintiff only worked approximately 35 hours per week.  (*See* Certification Sung Dang [27] at 17.)  Resolving this factual dispute between Plaintiff and Defendant will necessarily require an assessment of the credibility of Plaintiff, his coworkers, Mr. Dang, and Defendant; therefore, disposing of this issue on summary judgment is improper.  *See, e.g., Batres Guevara v. Ischia, Inc.*, 47 F. Supp. 3d 23, 27–28

(D.D.C. 2014) (denying summary judgment where plaintiffs offered three depositions in support of their overtime claim and defendant offered five affidavits against it); *Deloatch v. Harris Teeter, Inc.*, 797 F. Supp. 2d 48, 56–57 (D.D.C. 2011) (denying summary judgment where plaintiff offered his own deposition and interrogatory answers as the only evidence in support of his overtime claim); *Zirintusa v. Whitaker*, 674 F. Supp. 2d 1, 6–7 (D.D.C. 2009) (denying summary judgment where plaintiff offered her own chart of hours worked as the only evidence in support of her overtime claim).   Thus, this Court denies summary judgment as to Plaintiff's claim for overtime pay.

### 4.  <u>If Plaintiff proves that he was an employee under the FLSA, Mr. Nuyen will properly be classified as Plaintiff's employer under the FLSA.</u>

Plaintiff argues that Mr. Nuyen was Plaintiff's employer from March 2008 until January 2013 and is thus jointly and severally liable for Plaintiff's FLSA claims along with corporate Defendants.  (Pl.'s Mot. [26-1] at 8–10.)  Plaintiff argues that the economic reality test demonstrates that Mr. Nuyen is properly classified as Plaintiff's employer under the FLSA.  (*Id.*)

Although the D.C. Circuit has not addressed whether corporate officers may be classified as employers under the FLSA, this Court has consistently held that corporate officers may be so classified.  *See, e.g., Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 1, 5–6 (D.D.C. 2010); *Thompson v. Linda & A., Inc.*, 779 F. Supp. 2d 139, 152–53 (D.D.C. 2011); *Ruffin v. New Destination, LLC*, 800 F. Supp. 2d 262, 268–69 (D.D.C. 2011); *Wilson v. Hunam Inn, Inc.*, 126 F. Supp. 3d 1, 5–6 (D.D.C. 2015); *Al-Quraan v. 4115 8th St. NW, LLC*, 113 F. Supp. 3d 367, 369 (D.D.C. 2015); *Ventura v. L. A. Howard Constr. Co.*, 134 F. Supp. 3d 99, 102 n.1 (D.D.C. 2015). A corporate officer may be classified as an employer under the FLSA "if the officer has operational control of a corporation's covered enterprise."  *Ventura*, 738 F. Supp. 2d at 5.  In ascertaining whether the officer had operational control, the Court looks to "the totality of the

12

circumstances of the relationship between the plaintiff/employee and defendant/employer to determine whether the putative employer has the power to hire and fire, supervise and control work schedules or conditions of employment, determine rate and method of pay, and maintain employment records" in addition to the officer's ownership interest. *Ventura*, 738 F. Supp. 2d at 5–6 (internal quotation marks and citation omitted).

Plaintiff contends that Mr. Nuyen is properly classified as Plaintiff's employer under the FLSA because Mr. Nuyen was the owner of the corporate Defendants and "hired Plaintiff, set Plaintiff's rate of pay, controlled and supervised Plaintiff's work, and set and controlled Plaintiff's schedule." (Pl.'s Mot. [26-1] at 9–10.) Defendant responds that Plaintiff was hired by Mr. Dang, who also set Plaintiff's rate of pay and schedule and supervised Plaintiff's work. (Def.'s Opp'n [27] at 12.) Thus, Defendant contends that Mr. Nuyen's status as an employer is a question of law whose resolution depends on Mr. Dang's credibility, a determination not appropriate for summary judgment. (Def.'s Opp'n [27] at 6.)

Mr. Nuyen is the sole owner of the corporate Defendants. (Dep. David Nuyen [26-6] at 3–4.) In fact, Mr. Nuyen testified that the corporate Defendants are not legally separate entities from him. (*Id.*) Therefore, the only question for this Court is, if Plaintiff proves that he is an employee under the FLSA, whether Mr. Nuyen is properly classified as Plaintiff's employer under the FLSA.

To determine whether Mr. Nuyen is Plaintiff's employer, this Court must consider whether he "ha[d] the power to hire and fire, supervise and control work schedules or conditions of employment, determine rate and method of pay, and maintain employment records." *Del Villar v. Flynn Architectural Finishes, Inc.*, 664 F. Supp. 2d 94, 96 (D.D.C. 2009) (citing *Morrison*, 253 F.3d at 11). Defendant suggests that Mr. Dang is Plaintiff's employer in light of

13

these factors, to the exclusion of Mr. Nuyen.  (Def.'s Opp'n [27] at 12.)  According to Mr.

Dang's certification, he was "solely responsible for the hiring of Mr. Escamilla" and had "the

ability to fire him."  (Certification Sung Dang [27] at 16.)  Mr. Dang describes himself as

Plaintiff's "supervisor" and states that he would "figure out what a particular job is worth" and

thereby determine Plaintiff's pay.  (Certification Sung Dang [27] at 16–17.)  Mr. Dang kept

records concerning payment to Plaintiff and his coworkers.  (*Id.*)  Accordingly, Defendant is

correct that, if Plaintiff proves he is an employee under the FLSA, Mr. Dang would likely be

considered Plaintiff's employer.

However, "[a] single individual may stand in the relation of an employee to two or more

employers at the same time under the Fair Labor Standards Act of 1938."  29 C.F.R. § 791.2(a).

Hence, this Court may find that Mr. Nuyen was Plaintiff's employer even if Defendant is correct

that Mr. Dang was also Plaintiff's employer.

Mr. Nuyen exercised a degree of control over Plaintiff similar to that exercised by Mr.

Dang.  In his deposition, Mr. Nuyen stated that he had the power to hire people directly but

elected to delegate that responsibility to Mr. Dang because he did not have time to dedicate to

hiring.  (Dep. David Nuyen [26-6] at 14.)  Similarly, Mr. Nuyen stated that, although he never

fired someone directly, he could order Mr. Dang to fire someone because Mr. Dang would be

fired if he did not do as Mr. Nuyen said.  (*Id.*)  Mr. Nuyen always determined what work was to

be done based on his tenants' complaints even though Plaintiff and his coworkers received this

information indirectly—*i.e.*, through Mr. Dang.  (Dep. David Nuyen [26-6] at 11.)  Similarly,

Mr. Nuyen generally came to the apartment building at least once per week to supervise Mr.

Dang's, Plaintiff's, and Plaintiff's coworkers' work but would come as often as every day during

larger projects.  (Dep. David Nuyen [26-6] at 5, 16.)  Even though Mr. Dang determined how

much each job was worth, his calculation was informed by how much Mr. Nuyen was willing to pay for the job; thus, Mr. Nuyen indirectly set Plaintiff's pay.  (*See* Dep. David Nuyen [26-6] at 14.)  Mr. Nuyen also paid Plaintiff and his coworkers directly on multiple occasions.  (Dep. David Nuyen [26-6] at 12.)  Finally, even though Mr. Dang kept records of Plaintiff's work, Mr. Nuyen kept records of payments he made to Plaintiff as well as signed the service agreements that he required Mr. Dang to have all of the workers sign.  (Dep. David Nuyen [26-6] at 9, 17.)

Accordingly, the Court finds that the factors in *Morrison* require that, if Plaintiff is found to be an employee under the FLSA, Mr. Nuyen be classified as his employer and held liable for any proven damages.  Because Plaintiff has not yet demonstrated that he was an employee under the FLSA, the Court denies summary judgment as to Mr. Nuyen's status as an employer under the FLSA until such time as Plaintiff proves that he was an employee under the FLSA.

### 5.  <u>Summary judgment on liquidated damages is inappropriate where liability has not yet been established.</u>

Plaintiff argues that Defendant does not qualify for the FLSA's good faith exemption from liquidated damages.  (Pl.'s Mot. [26-1] at 10–12.)  Plaintiff argues that Defendant admitted that he relied on his own misclassification of Plaintiff as an independent contractor rather than on any reasonable interpretation of the FLSA.  (Pl.'s Mot. [26-1] at 11–12.)

If found in violation of the FLSA's overtime provision, an employer "shall be liable to the employee" for the amount of unpaid overtime wages "and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  The Court may decline to award liquidated damages only if the employer proves that he acted "in good faith" and "had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938."  *Id.* § 260.  This test requires subjective good faith on the part of the employer, *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 464 (D.C. Cir. 1976), as well an objectively "reasonable

belief that its acts or omissions did not violate the law," *Thomas v. Howard University Hospital*, 39 F.3d 370, 373 (D.C. Cir. 1994).

Plaintiff contends that Defendant's failure to cite any legal authority upon which his understanding of Plaintiff's status was based necessitates a finding that Defendant does not qualify for the FLSA's good-faith exemption.  (Pl.'s Mot. [26-1] at 11–12.)  Defendant responds that, because there was no FLSA violation, Plaintiff's claim for liquidated damages is therefore moot.  (Def.'s Opp'n [27] at 12.)

This Court has consistently held that summary judgment on liquidated damages is inappropriate where summary judgment on liability has been denied.  *See, e.g., Hunter*, 453 F. Supp. 2d at 62–63 ("[T]he question of [plaintiff]'s entitlement to liquidated damages can hardly be resolved at this time, when there has yet to be a determination of liability."); *Batres Guevara*, 47 F. Supp. 3d at 28–29 ("Because the Court is denying summary judgment on liability, it would be premature to grant summary judgment on liquidated damages.").  Plaintiff offers no reason why summary judgment ought to be granted as to liquidated damages apart from liability.  (*See* Pl.'s Mot. [26-1] at 10.)  Thus, this Court denies summary judgment as to Plaintiff's claim for liquidated damages.

6. **As in *Ayala*, Plaintiff's claim for equitable tolling depends on material facts that are in dispute and that preclude summary judgment.**

Plaintiff argues that his claims should be tolled to the beginning of his employment. (Pl.'s Mot. [26-1] at 12–15.)  Plaintiff argues that this Court's recent opinion in *Ayala v. Tito Contractors, Inc.*, 82 F. Supp. 3d 279 (D.D.C. 2015), established the guidelines for when equitable tolling applies in a claim brought under the FLSA.  (*Id.*)  Plaintiff argues his situation is sufficiently similar to that of the plaintiffs in *Ayala* to justify equitable tolling in this case. (Pl.'s Mot. [26-1] at 14–15.)

Claims brought under the FLSA are subject to a two-year statute of limitations unless the employer committed a "willful violation," in which case the statute of limitations is extended to three years.  29 U.S.C. § 255(a).  Although the D.C. Circuit has not addressed whether the FLSA's statute of limitations may be equitably tolled, the Fourth and Sixth Circuits have both applied equitable tolling to the FLSA.  *See Cruz v. Maypa*, 773 F.3d 138, 146–47 (4th Cir. 2014); *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 188–89 (6th Cir. 2008).  In addition, this Court recently held that equitable tolling in an FLSA case was within the Court's discretionary powers of equity.  *Ayala*, 82 F. Supp. 3d at 291.  In *Ayala*, Judge Boasburg denied summary judgment as to equitable tolling because there were disputed material facts concerning whether (1) defendant posted FLSA notices in the workplace, (2) defendant's misrepresentations misled plaintiffs, and (3) plaintiffs' lack of due diligence in pursuing their claims was due to their insufficient knowledge of their rights.  *Id.* at 289–92.

Plaintiff asks this Court to adopt the Fourth Circuit's rule from *Cruz*—that is, "tolling based on lack of notice continues until the claimant retains an attorney or obtains actual knowledge of her rights," 773 F.3d at 147.  (Pl.'s Mot. [26-1] at 14.)  Alternatively, Plaintiff contends that equitable tolling is appropriate because his case is substantially similar to *Ayala* in that (1) Defendant did not post FLSA notices at the workplace, (2) Defendant's misrepresentation to Plaintiff that Plaintiff was an independent contractor misled Plaintiff, and (3) Plaintiff is of limited education like the plaintiffs in *Ayala*.  (Pl.'s Mot. [26-1] at 14–15.)  Defendant responds that notice was not required because Plaintiff was an independent contractor and not an employee and that Plaintiff and Defendant properly understood their relationship as one of contract work and not of permanent employment.  (Def.'s Opp'n [27] at 13.)

17

This Court declines to adopt the Fourth Circuit's absolute rule in *Cruz*. The Court agrees with Judge Boasburg's observation that the discretionary nature of equitable tolling implies that "the Court need not, and likely should not, establish a *per se* rule regarding the effect of a failure to post FLSA notices." *Ayala*, 82 F. Supp. 3d at 291. Similarly, as in *Ayala*, this case presents disputed material facts that preclude summary judgment as to Plaintiff's entitlement to equitable tolling. Namely, there is dispute as to "the exact nature of [Defendant]'s interactions with Plaintiff[] and the atmosphere created by these communications," *id.*, particularly in light of the confusion surrounding the purported service agreement signed by Plaintiff, Mr. Dang, and Mr. Nuyen, (*see* Dep. David Nuyen [26-6] at 17, 20–21; Def.'s Am. Interrog. Answers [26-7] at 2; Certification Sung Dang [27] at 16). In addition, even the Fourth Circuit recognized that a failure to post entitles a plaintiff to equitable tolling only until that plaintiff "retains an attorney or obtains actual knowledge of her rights." *Cruz*, 773 F.3d at 147. Because this Court, like the *Cruz* court, does not presently have evidence of when Plaintiff first learned of his rights or retained an attorney, *see id.*, it is not appropriate to grant summary judgment on this issue. Thus, this Court denies summary judgment as to Plaintiff's entitlement to equitably toll his claims.


DATED: <u>August 3, 2016</u>                              _____/s/_____

                                                         ALAN KAY
                                                         UNITED STATES MAGISTRATE JUDGE