# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSE MILTON BAUTISTA ESCAMILLA )<br>)<br>Plaintiff, )<br>v. )<br>)<br>DAVID NUYEN, *et al.*, )<br>)<br>Defendants. )<br>) | Civil Action No. 14-00852 (RMM) |

## MEMORANDUM OPINION AND ORDER

Pending before this Court is Plaintiff Jose Milton Bautista Escamilla's ("Mr. Escamilla") Petition for Award of Attorney's Fees and Costs ("Fee Petition"). *See* ECF No. 45. On January 10, 2017, this matter was reassigned from Magistrate Judge Alan Kay to the undersigned for all purposes and trial. *See* January 10, 2017 Referral. On February 9, 2017, Mr. Escamilla filed the instant Fee Petition requesting attorney's fees and costs in the amount of $64,372.79, following Magistrate Judge Kay's finding that Defendants David Nuyen d/b/a USA Home Champion Realty and d/b/a Opmax ("Mr. Nuyen"), USA Home Champion Realty, Inc. ("HCR"), Opmax Management, LLC ("OM"), and Opmax, LLC ("Opmax") (collectively, "Defendants") violated the Federal Fair Labor Standards Act of 1938 ("FLSA") and D.C. Minimum Wage Act Revision Act ("DCMWA") by failing to pay Mr. Escamilla his overtime wages. Fee Petition at 2; Findings of Fact and Conclusions of Law ("Findings") at 29, ECF No. 42. The Fee Petition is unopposed. Nonetheless, the Court must deny Mr. Escamilla's Fee Petition in its entirety because it was not timely filed, and Mr. Escamilla has neither moved to enlarge the deadline nor established excusable neglect that would warrant such an extension.

## BACKGROUND

A.  **Factual Background**

On May 22, 2014, Mr. Escamilla brought suit against Defendants, alleging that Mr. Nuyen denied Mr. Escamilla his overtime wages, in violation of the FLSA and DCMWA. Compl. ¶¶ 31, 44-56, ECF No. 1. Mr. Escamilla worked for Defendants as a "general laborer" from approximately March 1, 2008 through approximately January 28, 2013. *See* Findings at 2, ECF No. 42. Mr. Nuyen served as president and primary owner of Opmax, HCR, OM, and the rental properties located in Washington, D.C. *Id.* Sung Dang ("Mr. Dang") was Mr. Nuyen's building manager. *Id.*

As a general laborer, Mr. Escamilla performed maintenance work on Mr. Nuyen's rental properties in Washington, D.C. *Id.* Specifically, Mr. Escamilla worked, on average, 66 hours per week cleaning, painting, and repairing the properties, in addition to performing plumbing and carpentry tasks. *Id.* Mr. Nuyen paid Mr. Escamilla $10.00 per hour rather than paying Mr. Escamilla his "half time" premium of $5.00 for every hour worked beyond a 40-hour workweek. *Id.* Throughout the duration of Mr. Escamilla's employment, he never received a raise. *Id.* at 6, 12.

Mr. Escamilla also claimed that Mr. Nuyen and Mr. Dang exercised significant control over his daily work routine and provided the tools for Mr. Escamilla and his coworkers to use each day at the job site. *Id.* at 6-8. Mr. Nuyen called Mr. Dang each day to inform him of Mr. Escamilla's tasks. *Id.* at 6. Mr. Nuyen and Mr. Dang also inspected Mr. Escamilla's work before he could perform the next assignment. *Id.* at 7. Moreover, Mr. Nuyen was often at the properties where Mr. Escamilla was working and was usually there for the majority of the workweek. *Id.* Mr. Nuyen also had the authority to fire Mr. Escamilla and his coworkers. *Id.*

Mr. Escamilla claimed Defendants failed to pay him overtime wages and therefore owed him $20,670.00.  *Id.* at 3.  Mr. Escamilla also requested liquidated damages, equitable tolling of his claims, and reasonable attorney's fees.  *Id.*  However, Defendants denied Mr. Escamilla's claims and argued that Mr. Escamilla was not Defendants' employee and was instead hired as an independent contractor who was paid per job rather than per hour.  *Id.*  Defendants also claimed that Mr. Escamilla signed a service agreement on February 1, 2012 that reflected his status as an independent contractor rather than an employee and therefore agreed to the terms of his employment.  *Id.*

**B.     Procedural Background**

Mr. Escamilla filed his Complaint on May 22, 2014 for Defendants' alleged violations of the FLSA and the DCMWA.  *See* Compl. at 2.  On December 18, 2014, District Judge James E. Boasberg ordered that the matter be referred to a magistrate judge for all purposes and trial.  *See* Order of Referral, ECF No. 11.  Accordingly, the case was reassigned to Magistrate Judge Alan Kay on December 18, 2014.  *See* Referral, ECF No. 12.

Magistrate Judge Kay conducted a two-day bench trial on October 24, 2016 and October 25, 2016.  *See* October 24, 2016 and October 25, 2016 Minute Entries.  During the bench trial and following its conclusion, Magistrate Judge Kay considered witness testimony, evidence presented, and the parties' proposed Findings of Fact and Conclusions of Law.  *See* Pl.'s Proposed Findings of Facts and Law, ECF No. 40; Defs.' Findings of Fact and Conclusions of Law, ECF No. 41.  In his Findings of Fact and Conclusions of Law, Magistrate Judge Kay ultimately determined that Mr. Escamilla had met his burden of proof in showing that Defendants violated the FLSA and the DCMWA for their failure to pay Mr. Escamilla his overtime wages.  *See* Findings at 3.  Magistrate Judge Kay therefore awarded Mr. Escamilla

$20,280.00 in damages for unpaid overtime wages, $20,280.00 in liquidated damages, and reasonable attorney's fees. *Id.* at 29. Magistrate Judge Kay did not apply equitable tolling to Mr. Escamilla's claims because he found the claims to be too speculative. *Id.* at 28. The Court further instructed Mr. Escamilla to file a fee petition so that the Court could determine the amount of attorney's fees to which Mr. Escamilla was entitled. *Id.* at 29. On January 6, 2017, Judgment was entered in favor of Mr. Escamilla. *See* Clerk's Judgment, ECF No. 43. On January 10, 2017, the case was reassigned to the undersigned magistrate judge for all purposes and trial. *See* January 10, 2017 Referral.

Several attorneys withdrew their appearance after the bench trial. On November 17, 2016, in a Joint Motion to Extend Time to File Findings of Fact, Jason Friedman, counsel for Mr. Escamilla, withdrew his appearance, and Gregg Greenberg replaced him as counsel for Mr. Escamilla. *See* Joint Motion to Extend Time to File Findings of Fact, ECF No. 39. On January 29, 2017, Daniel Wemhoff, counsel for Defendants, filed a Notice of Withdrawal of Appearance. *See* Withdrawal of Appearance, ECF No. 44. No attorney has entered an appearance for Defendants since Mr. Wemhoff withdrew.

Mr. Escamilla filed his Fee Petition on February 9, 2017. *See* Fee Petition, ECF No. 45. As the prevailing party, Mr. Escamilla seeks an award of attorney's fees in the amount of $58,777.20 for 173.70 hours of legal services, provided over the course of about two-and-a-half years, and costs in the amount of $5,595.59 for his filing, deposition transcript, and trial interpreter fees. *See* Fee Petition at 1, 13-14; *see also* Supp. Billing Records, ECF No. 45-1. The total requested amount is $64,372.79. *See* Fee Petition at 14.

On February 14, 2017, the Court, on its own motion, extended the deadline for Defendants' response to the Fee Petition by thirty days, through March 16, 2017, in light of the

withdrawal of defense counsel. *See* Order, ECF No. 46. However, Defendants did not respond to the Fee Petition prior to that date. On April 12, 2017, the Court requested that Defendants file a notice advising the Court of whether Defendants intended to seek additional time to respond to the Fee Petition. *See* April 12, 2017 Minute Order. The mailings notifying Mr. Dang of the Court's February 14, 2017 and April 12, 2017 orders were returned as undeliverable. *See* ECF Nos. 47, 48, 50. Defendants have neither responded to the Fee Petition nor requested additional time to do so.

## LEGAL STANDARD

The FLSA and DCMWA authorize an award of reasonable attorney's fees and costs to the prevailing party. 29 U.S.C. § 216(b); D.C. CODE §§ 32–1012(c), 32–1308(b) (2017); *see also Radtke v. Caschetta*, 822 F.3d 571, 572 (D.C. Cir. 2016); *Falica v. Advance Tenant Servs., Inc.*, 384 F. Supp. 2d 75, 77 (D.D.C. 2005). The award of reasonable attorney's fees to the prevailing plaintiff in a FLSA case is mandatory, provided that the plaintiff files a petition for fees in accordance with Federal Rule of Civil Procedure 54. *See Driscoll v. George Washington Univ.*, 55 F. Supp. 3d 106, 112 (D.D.C. 2014). The DCMWA also mandates that courts award fees to the prevailing party. *See Pleitez v. Carney*, 594 F. Supp. 2d 47, 53 (D.D.C. 2009); *see also* D.C. CODE § 32–1012(c) (2017).

Under Federal Rule of Civil Procedure 54, a party seeking attorney's fees must file a petition or motion for attorney's fees no later than 14 days after the entry of judgment unless a statute or court order provides otherwise. Fed. R. Civ. P. 54(d)(2)(B); *Radtke*, 822 F.3d at 573. That fourteen-day deadline is "designed, like a statute of limitations, to promote the finality of closed cases and prevent disputes about stale facts by 'afford[ing] an opportunity for the court to resolve fee disputes shortly after trial, while the services performed are freshly in mind.'"

*Mobley v. Dep't of Homeland Sec.*, 908 F. Supp. 2d 42, 45 (D.D.C. 2012) (quoting Fed. R. Civ. P. 54 Advisory Comm. Note (1993 Amendments)). Rule 54 expressly contemplates that a court may extend the time period for the requesting party to seek fees, as it provides that a fee petition is due within fourteen days "[u]nless a . . . court order provides otherwise." Fed. R. Civ. P. 54(d)(2)(B). However, several courts have determined that after the deadline expires, any request for an enlargement of time must satisfy Federal Rule of Civil Procedure 6(b)(1)(B), which requires a showing of excusable neglect. *See, e.g.*, *West v. Potter*, No. 05-1339-BJR, 2016 WL 4275583, at *1 (D.D.C. Aug. 12, 2016) (denying motion requesting additional attorney's fees because it was filed more than a year after the entry of judgment without a sufficient showing of excusable neglect); *Gaskins v. BFI Waste Servs., LLC*, 281 F. App'x 255, 259 (4th Cir. 2008) ("[T]he language of Rule 6(b) . . . controls the exercise of a trial court's discretion to extend the filing deadlines established by the applicable rules, including Rule 54(d)(2)(B)."); *Tancredi v. Metro Life Ins. Co.*, 378 F.3d 220, 226 (2d Cir. 2004) (rejecting the theory that Rule 54(d)(2)(B) "gives district courts *carte blanche* to extend the time to move for attorneys' fees after the deadline expires without having to find 'excusable neglect' under Rule 6."); *Kyle v. Campbell Soup Co.*, 28 F.3d 928, 931-32 (9th Cir. 1994) (reversing district court's enlargement of time to file fee petition because attorney failed to show excusable neglect); *see generally Quigley v. Rosenthal*, 427 F.3d 1232, 1237-38 (10th Cir. 2005) (affirming trial court's conclusion that plaintiff had failed to establish that failure to file timely fee petition constituted excusable neglect).

## DISCUSSION

A.  **Mr. Escamilla's Petition is Untimely**

The Court begins with the threshold issue of whether Mr. Escamilla's Fee Petition is timely. As noted, Rule 54 instructs that, unless a statute or court order provides otherwise, a motion for attorney's fees must "be filed no later than 14 days after the entry of judgment." Fed. R. Civ. P. 54(d)(2)(B); *see also Radtke*, 822 F.3d at 573. Although both the FLSA and DCMWA mandate that courts award "a reasonable attorney's fee" and "costs of the action" to the prevailing party, neither statute provides a schedule for filing a motion or petition for attorney's fees. *See* 29 U.S.C. §§ 201 *et seq.*; D.C. CODE §§ 32-1001 (2017) *et seq.* Accordingly, Rule 54's fourteen-day period applies absent a court order to the contrary.

This Court has not issued an order modifying the deadline for Mr. Escamilla's Fee Petition. In the Findings of Fact and Conclusions of Law, Magistrate Judge Kay instructed Mr. Escamilla to file a fee petition but did not address the deadline for filing that petition. *See* Findings at 29. Mr. Escamilla has neither moved for nor obtained an enlargement of the deadline for submitting the Fee Petition. Moreover, no other intervening motions or orders exist that would modify or toll the time period for seeking fees. *See generally Radtke*, 822 F.3d at 573-74 (holding the resolution of a Rule 50(b), Rule 52(b), or Rule 59 motion creates a new period for filing a fee petition). Consequently, Federal Rule of Civil Procedure 54 controls, and the fourteen-day deadline applies. *See* Fed. R. Civ. P. 54(d)(2)(B); *Radtke*, 822 F.3d at 574 (noting that the plain language of Rule 54 "requires a petition be filed 'no later than' 14 days after judgment is entered").

This Court issued its Findings of Fact and Conclusions of Law on January 3, 2017, and Judgment was entered on January 6, 2017. *See* ECF Nos. 42, 43. Accordingly, the Fee Petition

7

was due within fourteen days, *i.e.* by January 20, 2017. Mr. Escamilla waited an additional twenty days beyond that deadline and filed his Fee Petition on February 9, 2017. *See* ECF No. 45. Therefore, the Fee Petition is untimely. *See West*, 2016 WL 4275583, at *1 (finding plaintiff's motion for attorney's fees was untimely where plaintiff waited over a year before requesting an extension or filing a motion estimating the amount of requested fees); *Mobley*, 908 F. Supp. 2d at 44-45 (denying plaintiffs' petition for attorney's fees as untimely where the plaintiffs filed a petition for attorney's fees more than six months after the plaintiffs voluntarily dismissed the case).

### B. The Court Cannot Excuse the Untimeliness of Mr. Escamilla's Fee Petition

Federal Rule of Civil Procedure 6(b) establishes the parameters under which a Court may accept a late-filed submission. That rule provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B); *see also Smith v. Dist. of Columbia*, 430 F.3d 450, 456-57 (D.C. Cir. 2005). Thus, the rule establishes three prerequisites for obtaining an enlargement after a deadline has lapsed: (1) a motion from the party who missed the deadline; (2) good cause; and (3) a finding that "the failure to act was the result of excusable neglect." *Smith*, 430 F.3d at 456; *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 896 (1990) (emphasizing that post-deadline extensions may be granted only "for cause shown" and "upon motion"); *West*, 2016 WL 4275583, at *1 (noting that Rule 6(b)(1)(B) allows a court to extend the time period for filing a motion for attorney's fees after the time period has run if the delay is due to "excusable neglect."). Rule 54 is not among the rules exempted from Rule 6(b). *See* Fed. R. Civ. P. 6(b)(2) (precluding extensions of deadlines set in Rules 60(b) and (d), 52(d), 59(b), (d), and (e), and 60(b)). Accordingly, Rule

8

6(b) applies to fee petitions filed under Rule 54(b), and therefore constrains this Court's ability to review a late-filed fee petition. Indeed, extending the deadline for filing a fee petition in these circumstances without a showing of excusable neglect "would impede the[] efficiency and fairness goals" that Rule 54(d)(2)(B) was designed to further. *Tancredi v. Metropolitan Life Insurance Co.*, 378 F.3d 220, 227 (2d Cir. 2004).

Mr. Escamilla's failure to seek an enlargement of the deadline for filing his Fee Petition proves fatal to his request for fees and costs. Under Rule 6(b), courts may only extend deadlines without a motion "*before the original time or its extension expires*." Fed. R. Civ. P. 6(b)(1)(A) (emphasis added). Without a formal motion for an extension, a court has "no basis on which to exercise its discretion" to extend a deadline after it has lapsed. *Smith*, 430 F.3d at 457 (citing *Lujan*, 497 U.S. at 896 n.5.); *see also* Fed. R. Civ. P. 6(b)(1)(B). Consequently, this Court has no authority to extend the deadline for Mr. Escamilla's late-filed Fee Petition, or to consider the merits of Mr. Escamilla's request for fees and costs. Instead, Mr. Escamilla's Petition must be denied as untimely.

Even if the Fee Petition's brief reference to the tardiness of the filing could be construed as an enlargement request,[1] this Court would have no basis to extend the deadline because the stated cause for the delay does not rise to the level of excusable neglect. The Supreme Court addressed the meaning of "excusable neglect" in *Pioneer Investment Services Co. v. Brunswick Assocs. Ltd. Partnership, et al.*, 507 U.S. 380 (1993). *Pioneer* identifies four factors that courts should consider when determining what kind of neglect will be considered "excusable," including: (1) the danger of prejudice to the party opposing the modification; (2) the length of

---

[1] In a footnote to the Fee Petition, Mr. Escamilla acknowledges that the Petition was filed after the deadline expired and attempts to explain the reasons for the delay. *See* Fee Petition at 2 n.2. However the Fee Petition does not expressly ask the Court to extend the deadline.

9

delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *See id.* at 395; *see also In re Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1209 (D.C. Cir. 2003) (applying the four *Pioneer* factors). Determining whether a party's neglect is excusable "is at bottom an equitable [decision], taking account of all relevant circumstances surrounding the party's omission." *Inst. for Policy Studies v. U.S.C.I.A.*, 246 F.R.D. 380, 383 (D.D.C. 2007) (quoting *Pioneer,* 507 U.S. at 395). Fault is "perhaps the most important single factor." *Webster v. Pacesetter, Inc.*, 270 F. Supp. 2d 9, 14 (D.D.C. 2003) (quoting *City of Chanute, Kan. v. Williams Natural Gas Co.*, 31 F.3d 1041, 1046 (10th Cir. 1994)); *see also Wilson v. Prudential Fin.*, 218 F.R.D. 1, 3 (D.D.C. 2003) (describing fault as the "key factor" in excusable neglect analysis).

"[I]nadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *D.A. v. Dist. of Columbia*, No. 07-1084, 2007 WL 4365452, at *3 (D.D.C. Dec. 6, 2007) (quoting *Pioneer*, 507 U.S. at 392.). That is unsurprising, for if a simple mistake made by counsel were sufficient to excuse an untimely filing, it would be "hard to fathom the kind of neglect that we would not deem excusable." *Cohen v. Bd. of Trs. of the Univ. of the Dist. of Columbia*, 819 F.3d 476, 480 (D.C. Cir. 2016) (quoting *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 464 (8th Cir. 2000)) (finding no excusable neglect where Cohen's counsel misread court's electronic docket and missed filing deadline); *see also Jarvis v. Parker*, 13 F. Supp. 3d 74, 79 (D.D.C. 2014) (quoting *Spears v. City of Indianapolis*, 74 F.3d 153, 158 (7th Cir.1996)) ("If the court allows litigants to continually ignore deadlines and seek never ending extensions without consequence, soon the court's scheduling orders would become meaningless.").

Mr. Escamilla's explanation for the delay in filing the Fee Petition falls short of establishing excusable neglect. Mr. Escamilla states in a footnote to the Fee Petition that:

> Plaintiff would have filed this petition earlier. But, Defendants had previously given indications of an intention to appeal the Court's ruling and Plaintiff did not want to file the instant petition and then later file a supplemental petition. When defense counsel filed his Notice to Withdraw, it became apparent that an appeal and/or other post-judgment motion was not forthcoming. As such, and with apologies to the Court for the delay, Plaintiff, through counsel, files this petition for an award of fees and costs.

Fee Petition at 2 n.2. Plaintiff's counsel does not claim to have been unaware of Rule 54, yet deliberately chose to delay the submission of the Fee Petition until it was apparent that Defendants were unlikely to file an appeal or other post-judgment motion. Thus the articulated reasons for the delay — waiting for a possible appeal[2] — were fully and reasonably within the control of Mr. Escamilla and his counsel. *See Pioneer*, 507 U.S. at 395; *In re Vitamins Antitrust Class Actions*, 327 F.3d at 1209. Even if Defendants had at some point expressed an intention to appeal, Mr. Escamilla and his counsel bore the "responsibility to notify the Court of any need for an extension of time." *West*, 2016 WL 4275583, at *1; *see generally Lepkowski v. U.S. Dep't of Treasury*, 804 F.2d 1310, 1313 (D.C. Cir. 1986) (citing counsel's "fail[ure] to exert the minimal effort which would have cured" failure to respond to filing inconsistent with a finding of excusable neglect).

Mr. Escamilla's explanation for his untimeliness also conflicts with the purpose of Rule 54's fourteen-day deadline. That deadline was intended "to align the resolution of fee requests with the time for appealing the merits of a case" and "to assure that the opposing party is

---

[2] The record, including the bench trial transcripts and both parties' proposed Findings of Fact, contains no evidence that Defendants expressed an intent to appeal. *See* ECF Nos. 37, 38, 40, 41.

11

informed of the claim before the time for appeal has elapsed." *Mobley*, 908 F. Supp. 2d at 45 (quoting Fed. R. Civ. P. 54 Advisory Comm. Note (1993 Amendments)); Fed. R. Civ. P. 54 Advisory Comm. Note (1993); *see also Radtke*, 822 F.3d at 573 (quoting and giving weight to Advisory Committee's Notes when interpreting Rule 54). While Mr. Escamilla's counsel may believe that a different procedural sequence would be more efficient, the Advisory Committee concluded otherwise.

The remaining three *Pioneer* factors favor Mr. Escamilla. The late motion does not prejudice the defendants because they already were on notice that Mr. Escamilla could request attorney's fees. The length of the delay, approximately three weeks, was relatively short, and there is no reason to believe Mr. Escamilla acted in bad faith.

The absence of prejudice or bad faith does not warrant a finding of excusable neglect. Given that Mr. Escamilla's counsel's firm has handled "hundreds" of local FLSA cases, Fee Petition at 9, he should be familiar with the deadline for filing FLSA fee petitions. Yet he apparently made a conscious and strategic choice to ignore the filing deadline, perhaps hoping that the Court would set a later deadline if an appeal were filed. *See* Fed R. Civ. P. 54 Advisory Comm. Note (1993) (describing ways the trial court may modify the deadline for seeking fees if an appeal has been filed). That gamble did not pay off. This Court's precedent is "replete with examples of untimely filings being rejected where the only triggering *Pioneer* factor was . . . a mistake made by counsel." *Inst. For Policy Studies*, 246 F.R.D. at 384; *see, e.g.*, *Jarvis*, 13 F. Supp. 3d at 78–79 (citing counsel's avoidable error as the reason for denying plaintiff's late motion for relief from judgment, despite the other three *Pioneer* factors favoring the plaintiff); *McDowell-Bonner v. Dist. of Columbia*, 668 F. Supp. 2d 124, 127 (D.D.C. 2009), *aff'd*, No. 09-7160, 2010 WL 2574152 (D.C. Cir. June 16, 2010) (denying plaintiffs' motion to reconsider

solely because counsel's repeated neglect and inattention to local rules caused plaintiffs to miss filing deadline); *Ramseur v. Barreto*, 216 F.R.D. 180, 182 (D.D.C. 2003) (rejecting defendant's response to plaintiff's petition for relief and attorney's fees where defense counsel inadvertently missed the filing deadline for the response); *see generally Webster,* 270 F. Supp. 2d at 14–15 (noting that fault is the most important single factor). Here, too, Mr. Escamilla's responsibility for this omission outweighs the other three factors and counsels against a finding of excusable neglect.

The Court recognizes that its interpretation and application of the applicable rules and precedent means that Mr. Escamilla will bear severe consequences for failing to timely petition the Court for fees and costs. Due to counsel's tactical mistake, Mr. Escamilla's Fee Petition will be denied notwithstanding that the petition is unopposed and the relevant statutes otherwise would entitle Mr. Escamilla to reasonable attorney's fees and costs. However, that is the only outcome consistent with the applicable law. The D.C. Circuit unequivocally held, in *Smith v. District of Columbia*, that Rule 6(b)(2) precludes courts from extending deadlines that have lapsed if the tardy party fails to file a motion that establishes excusable neglect and good cause to extend the deadline. 430 F.3d at 457. Moreover, "it is only fair to require all parties . . . to comply with the Federal Rules of Civil Procedure." *Cobell v. Norton*, 213 F.R.D. 42, 42 (D.D.C. 2003).

This ruling is without prejudice to Mr. Escamilla's ability to file an enlargement motion under Rule 6(b)(2). However, the justification Plaintiff's counsel already has provided casts

significant doubt upon Mr. Escamilla's ability to demonstrate in such a motion that his untimeliness constitutes "excusable neglect."

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff's Petition for Award of Attorney's Fees and Costs is untimely. It is therefore

**ORDERED** that Plaintiff's Petition for Award of Attorney's Fees and Costs is DENIED.

**SO ORDERED.**

Dated: September 25, 2017

ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE